Filed 10/21/21  P. v. Hester CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073657 |
| v. | (Super.Ct.No. FSB1800934) |
| NICHOLE HESTER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Harold T. Wilson, Jr., Judge.  Affirmed with directions.

Kevin J. Lindsley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and James H. Flaherty, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I. INTRODUCTION

A jury found defendant and appellant Nichole Hester guilty as charged of one count of welfare fraud, or "aid by misrepresentation" (Welf. & Inst. Code, § 10980, subd. (c)(2) count 1), and of three counts of perjury (Pen. Code, § 118, subd. (a);[1] counts 5, 6, & 7). The jury found defendant not guilty of three additional counts of perjury (counts 2, 3, & 4).

The prosecution claimed that defendant knowingly, and with the specific intent to deceive, made false statements regarding her household composition and income in an August 2014 application for CalFresh (food stamp) benefits with the County of San Bernardino (the County), and in six subsequently submitted semiannual status reports and recertification forms, which defendant signed under penalty of perjury between March 2015 and September 2017. Count 1 was based on all the false statements that defendant allegedly made between October 2014 and February 2018. Counts 2 through 5, the perjury counts, were based on the false statements that defendant allegedly made in her submissions to the County, which she signed under penalty of perjury in March 2015 (count 2), September 2015 (count 3), March 2016 (count 4), August 2016 (count 5), April 2017 (count 6), and September 2017 (count 7).

The alleged false statements were that defendant's husband, K.H., was not part of her household and that defendant had no income because K.H. no longer lived with defendant and their three children. Thus, defendant did not report K.H.'s employment

---

[1] Unspecified statutory references are to the Penal Code.

income on any of the CalFresh forms she signed and submitted to the County between August 2014 and September 2017.  In acquitting defendant of perjury in counts 2 , 3, and 4, the jury necessarily rejected the prosecution's claim that defendant made false representations in the forms she signed under penalty of perjury in March 2015, September 2015, and March 2016.

At sentencing on August 20, 2019, the court suspended imposition of sentence, placed defendant on formal probation for five years, and ordered her to serve one year in county jail on weekends.  (Former § 1203.1, subd. (a).)  Defendant was further ordered to pay $25,227 in restitution to the County, plus a 15 percent collection fee, for a total restitution of $29,011.05.  The court imposed a $300 restitution fine, and a $30 criminal conviction fee and a $40 court operations fee on each of defendant's four convictions, for a total of $580.

In this appeal, defendant claims (1) her convictions in counts 1, 5, 6, and 7 must be reversed because insufficient evidence shows she knowingly made a false statement, or specifically intended to defraud anyone, in order to obtain CalFresh benefits; (2) the court prejudicially erred in failing to instruct on the corroboration element of perjury; (3) the court violated her due process rights in imposing the $300 restitution fine and the $280 in fees without determining she had the present ability to pay them; and (4) her five-year probationary period must be reduced to two years pursuant to Assembly Bill No. 1950 (2019-2020 Reg. Sess.) (Assembly Bill 1950) (Stats. 2020, ch. 328, § 2, eff. Jan. 1. 2021), which applies retroactively to her nonfinal, August 20, 2019 judgment.

We conclude (1) substantial evidence supports the specific intent to defraud element of defendant's four convictions; (2) the court erroneously failed to instruct on the corroboration element of perjury (§ 118, subd. (b)), but the error was harmless because it is not reasonably probable that it affected any of the verdicts; (3) any due process error in imposing the restitution fine and the criminal conviction and court operations fees was harmless beyond a reasonable doubt because the record shows defendant is able to earn sufficient employment income to pay the $580 sum over time; and 4) Assembly Bill 1950 retroactively applies to defendant, but the matter must be remanded for resentencing so the court may determine whether defendant has successfully completed her probation (§ 1203.4) at the time it is terminated and, if necessary, modify the terms of her probation (§ 1203.3) so that she may be able to successfully complete it.

In all other respects, we affirm the August 20, 2019 judgment.

## II. FACTS AND PROCEDURE

A. *Prosecution Evidence*

### 1. Defendant, K.H., and Their Children

At the time of trial in July 2019, K.H. and defendant had been married since 2009 and had four children, born in 2008, 2010, 2012, and November 2017. K.H. was employed during the years 2014 to 2019.

### 2. Defendant's August 2014 CalFresh Application

On August 13, 2014, defendant completed and electronically signed, under penalty of perjury, an electronic application for CalFresh (foods stamp) benefits with the County. The application required defendant to document the earned income of everyone in her

4

household, and it included a list of her "rights and responsibilities" under the CalFresh program. One of her responsibilities was to "[g]ive the County all information needed to determine [her] eligibility," and to "[r]eport changes" to her eligibility status "as required."

In the application, defendant represented that her and the children's "physical" address was on West 56th Street in San Bernardino. She claimed to be "without money for food" and requested CalFresh benefits for herself and her three children. She stated she was married, but she did not include K.H. as a member of her household or include K.H.'s employment income on her application. Instead, she declared that she was the only adult member of her household and that no member of her household was employed or earned income from employment. She also represented that, for the 2014 tax year, her "expected filing status" was "married filing separately," and her three children were her dependents.

The application included the following warning: "You are committing a crime if you give false or wrong information, or do not give all the information on purpose to try to get CalFresh, cash aid, and Medi-Cal, that you are not eligible to receive . . . . You must pay back any benefits you get that you were not eligible to receive. If you do this on purpose and receive more than $950 in benefits you were not eligible to receive, you can be charged with a felony." In signing the application, defendant acknowledged under penalty of perjury that her representations in the application were "true, correct, and complete to the best of [her] knowledge."

As part of the CalFresh application process, defendant participated in a telephonic interview with P.C., an aid eligibility worker for the County, on September 23, 2014. Defendant told P.C. that she was the only adult in her household, that K.H. was no longer living in the household,[2] and that she had no income and three dependent children.

P.C. explained to defendant her rights and responsibilities under the CalFresh program, including her responsibility to report any changes to her address, her household composition, and her household income. Defendant acknowledged that she understood these responsibilities, her representations in her August 13, 2014 application were made under penalty of perjury, and any subsequent applications or reports she signed would also be signed under penalty of perjury. Based on defendant's representations, P.C. determined that defendant was eligible to receive an "ongoing," monthly CalFresh benefit of $649.

3. Defendant's Subsequent Semiannual Reports and Annual Recertifications

In order to continue receiving CalFresh benefits from the County, defendant was required to complete and submit semiannual status reports, as well as annual renewal applications or "recertification" forms, reporting any changes to her CalFresh eligibility status, including any changes to her home address, household composition, and household income. The prosecution presented evidence that, on or around the dates alleged in the six perjury counts—March 5, 2015 (counts 2), September 18, 2015

_____

[2] Defendant had a prior CalFresh application, which included K.H. as a member of her household, and she received CalFresh benefits under that application, but P.C. explained that defendant "took the affirmative action to remove [K.H.]" from her CalFresh case when she filed her August 13, 2014 electronic application.

6

(count 3), March 9, 2016 (count 4), August 23, 2016 (count 5), April 6, 2017 (count 6), and September 2, 2017 (count 7)—defendant signed and submitted semiannual reports and recertification forms to the County, each affirming under penalty of perjury that K.H. was not a member of her household, she had no income, and she and K.H.'s children lived at the West 56th Street address in San Bernardino.

4. K.E.'s Fraud Investigation

Around late 2017 or early 2018, after defendant and K.H.'s fourth child was born in November 2017, a County fraud investigator, K.E., was assigned to investigate defendant's "household composition" at defendant's reported address on West 56th Street in San Bernardino. K.E. called defendant on January 4, 2018, after K.E. was unable to locate defendant at the West 56th Street address. During the call, defendant told K.E. that she was living "house to house," but she refused to tell K.E. where she was living and she was uncooperative.

A Department of Motor Vehicle (DMV) records search showed that defendant's husband, K.H., was living at an address on Kendall Drive in San Bernardino. The older children's school records from the San Bernardino City Unified School District showed that defendant and K.H.'s older children were also living at the Kendall Drive address.

On January 25, 2018, K.E. went to the Kendall Drive address, an apartment complex, and happened to see K.H. in the manager's office. K.E. recognized K.H. from his DMV photograph, and obtained statements from him. K.H. denied that defendant lived with him in his Kendall Drive apartment, but he said the children lived in the apartment with him. He explained that he and defendant had marital issues, and that

7

defendant lived at the West 56th Street address until a few weeks before August 2016. Since that time, defendant came to K.H.'s Kendall Drive apartment almost every day, and she would sometimes spend the night there, but she did not live there. K.H. also said that he did not move out of the West 56th Street address "full time" while defendant lived there before August 2016.

On January 26, 2018, the day after K.E. spoke with K.H., defendant reported in her public benefits case file with the County that K.H. was a member of her household and that she lived at the Kendall Drive address. Defendant contacted the County to make this change on January 25.

During a February 20, 2018 meeting in K.E.'s office, defendant confirmed to K.E. that the signatures on her August 13, 2014 CalFresh application and on her March 2015 through September 2017 status reports and recertification forms were her signatures. She told K.E. that she and K.H. were married and that she had moved out of the West 56th Street address on an "unknown date" in 2016. She did not say where she or her children were living, but she said she went to K.H.'s Kendall Drive apartment "almost every day." Still, she denied that she and K.H. were purchasing and preparing meals together. Based on the information he received during his investigation, K.E. believed that defendant had fraudulently obtained CalFresh benefits from October 1, 2014 through February 28, 2018.

5. The Testimony of Two Kendall Drive Apartment Complex Employees

Two employees from the Kendall Drive apartment complex testified. C.H. had worked as a leasing consultant for the complex from August 2017 to February 2018. K.H. rented an apartment there and, based on her observations, C.H. believed that

8

defendant lived in K.H.'s apartment with K.H. C.H. saw defendant at the complex "throughout the week," including by the pool with her children. Defendant was not a party to K.H.'s lease, but she was required to be if she was living with K.H.. At some point, C.H. asked K.H. to add defendant to his lease but, in order to do that, C.H. needed documents from defendant, which C.H. said were "lagging." On January 31, 2018, C.H. told the fraud investigator, K.E., that K.H. had denied to C.H. that defendant was living with him.

Before the time of trial in July 2019, J.W. had been the property manager of the Kendall Drive apartment complex for approximately 10 years. K.H. signed his lease on August 26, 2016, and moved into his apartment on August 27, 2016. K.H.'s three children were listed as "occupants" on his lease, and J.W. knew that the children lived in K.H.'s apartment. J.W. also saw defendant at the complex on a "daily" basis. In February 2018, K.H. and defendant signed a new lease together, and they still lived in the Kendall Drive apartment in July 2019.

6. K.H.'s Testimony

K.H. testified that he moved into his Kendall Drive apartment in August 2016. He claimed he stopped living at the West 56th Street address in July or August 2014, and he lived with his parents in Fallbrook until August 2016. He denied telling K.E. that he lived at the West 56th Street address between October 2014 and August 2016. Although he listed his children as "occupants" on his August 2016 lease for his Kendall Drive apartment, he denied that the children lived with him "full time" before 2018. He

9

claimed that defendant and the children did not move into his Kendall Drive apartment until 2018.

From October 2016 through December 2017, K.H. and defendant reported to their children's elementary school that the children were living in the Kendall Drive apartment so the children could attend that particular school, which was within walking distance of the Kendall Drive apartment. Between October 2016 and December 2017, defendant and the children would stay in the Kendall Drive apartment "on occasion," but the children "primarily" lived with defendant and her family in Escondido. On most days before 2018, defendant would drive the children from Escondido to their school in San Bernardino.

K.H. was regularly employed from August 2014 through July 2019. His employment records (W-2 forms) showed that he lived at the West 56th Street address in 2014 and 2015, and at the Kendall Drive apartment in 2016 and 2017. He reported on his income tax returns that he was "married," and he claimed the children, and sometimes defendant, as his dependents.

7. Additional Prosecution Evidence

An aid eligibility worker for the County testified that, from October 2014 through February 2018, defendant received $25,227 in CalFresh benefits that she was not entitled to receive based on K.H.'s income during that period. Defendant was also ineligible to receive CalFresh benefits from the County for any period of time that she lived outside the County.

10

B.  *Defense Evidence*

Defendant's father testified that, from sometime in 2016—he could not recall exactly when—to February 2018, defendant and the children lived with him and his wife in a separate apartment he made for them in the lower level of his home in Escondido. Defendant was not employed during this time, and she traveled to San Bernardino to take her children to school.  She moved into K.H.'s apartment around three months after she gave birth to her and K.H.'s fourth child in 2017.

K.H.'s mother testified that K.H. and defendant were married in 2009, but they did not live together from around August 2014 to August 2016.  During that period, K.H. lived with his parents in Fallbrook, and his children lived in San Bernardino.

C.  *Rebuttal Evidence*

When a defense investigator contacted K.H.'s mother in 2018, K.H.'s mother said that K.H. lived with her and her husband in Fallbrook, from July to August 2016—that is, for one to two months during 2016, not from August 2014 to August 2016, as she had testified.

### III.  DISCUSSION

A.  *Substantial Evidence Supports the Specific-intent-to-deceive Element of Defendant's Aid by Misrepresentation and Perjury Convictions in Counts 1, 5, 6, & 7*

Defendant claims that each of her convictions—for aid by misrepresentation in count 1 and for perjury in counts 5, 6, and 7—must be reversed because insufficient evidence shows that she made any false statement or omission of fact, in connection with any of her CalFresh benefits applications or submissions, with the specific intent to

11

deceive or defraud the County of CalFresh benefits.  We disagree.  As we explain, substantial evidence supports the jury's implicit determination in convicting defendant in counts 1, 5, 6, and 7, that defendant willfully and knowingly made false statements with the specific intent to deceive as alleged in counts 1, 5, 6, and 7.

    1.  <u>The Intent to Defraud Element of Defendant's Convictions</u>

      (a)  *Count 1 (Aid by Misrepresentation)*

Defendant was convicted in count 1 of obtaining or retaining public assistance, or aid, by misrepresentation, in violation of subdivision (c)(2) of section 10980 of the Welfare and Institutions Code.  The statute is violated, "Whenever any person has, willfully and knowingly, *with the intent to deceive*, by means of false statement or representation, or by failing to disclose a material fact . . . obtained or retained aid under the provisions of this division [(Welf & Inst. Code, § 10000 et. seq.)] for himself or herself or for a child not in fact entitled thereto," in an amount over $950.  (Welf. & Inst. Code, § 10980, subd. (c)(2), italics added.)  Thus, the specific intent to deceive is a necessary element of the crime of aid by misrepresentation.

The information alleged that defendant committed count 1 "[o]n or about October 1, 2014 through February 28, 2018."  The jury was instructed that, in order to convict defendant in count 1, it had to find that she "willfully and knowingly made a false statement, representation . . . or failed to disclose a material fact . . . [¶] *with the specific intent to deceive of defraud*," between "on or about October 1, 2014 through and including February 28, 2018."  (Italics added.)

12

(b) *Counts 5, 6, and 7* (*Perjury*)

The crime of perjury also requires a specific intent to deceive. "The elements of perjury are: 'a "willful statement, under oath, of any material matter which the witness knows to be false." ' " (*People v. Garcia* (2006) 39 Cal.4th 1070, 1091.) "[T]he specific *intent* to declare falsely under oath or penalty of perjury" is an "essential element of the crime of perjury." (*People v. Viniegra* (1982) 130 Cal.App.3d 577, 584.)

In counts 5, 6, and 7, the information alleged that defendant committed perjury by failing to disclose her true and accurate household composition and income in three particular instances: (1) in an August 23, 2016 recertification application (count 5); (2) in an April 6, 2017 semiannual report (count 6); and (3) in a September 2, 2017 recertification application (count 7), all of which defendant signed under penalty. The jury was instructed that counts 5, 6, and 7 were based on these particular allegations, and that the jury could not convict defendant of perjury as alleged in these counts unless it found that, "when [she] made the false statement, she intended to declare or certify falsely while under penalty of perjury." (CALCRIM No. 2640.)

2. Standard of Review

In reviewing a claim that insufficient evidence supports a criminal conviction, our task is to review the entire trial record in the light most favorable to the judgment in order to determine whether it contains substantial evidence—evidence that is reasonable, credible, and of solid value—such that a rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 576-577.) " ' "If the circumstances reasonably justify the trier of fact's

13

findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*People v. Bean* (1988) 46 Cal.3d 919, 933.)

3. Analysis

Regarding defendant's perjury convictions in counts 5, 6, and 7, the record contains substantial evidence that defendant specifically intended to deceive the County CalFresh benefits when, on or around August 23, 2016 (count 5), April 6, 2017 (count 6), and September 2, 2017 (count 7), she signed two recertification applications (counts 5 & 7) and a semiannual report (count 6), certifying under penalty of perjury that she was the only adult member of her household, she had no income, and she and the children continued to live at the West 56th Street address in San Bernardino. The jury heard evidence that, on or around these dates, defendant and the children did not live at the West 56th Street address but lived with her father in Escondido, or lived with K.H. in his Kendall Drive apartment, and that K.H. earned employment income sufficient to disqualify defendant from receiving CalFresh benefits for herself and the children.

The employees of the Kendall Drive apartment complex, C.H. and J.W., testified that they often saw defendant and the children at the complex and they knew, or at least it appeared to them, that defendant and the children lived with K.H. in his apartment at the complex. K.H. listed the children as "occupants" of his apartment when he signed his lease on August 26, 2016. Thereafter, J.W., saw defendant at the apartment complex on a "daily" basis, and J.W. knew that the children lived in K.H.'s apartment. After C.H. began working at the apartment complex in August 2017, C.H. also saw defendant there

14

"throughout the week." C.H. saw defendant in the parking lot, walking around the complex, and "daily" by the pool with her children; and C.H. believed that defendant and the children lived in K.H.'s apartment.

It was undisputed that, from August 2016 through 2017, defendant and K.H.'s older children attended an elementary school in San Bernardino, within walking distance of K.H.'s Kendall Drive apartment. Although K.H. and defendant denied that defendant and the children lived "full time" in K.H.'s apartment before 2018, and defendant also denied that she and K.H. prepared meals together before 2018, the jury was entitled to discredit K.H.'s testimony and defendant's statement, in light of the substantial evidence that defendant, K.H., and the children lived in K.H.'s Kendall Drive apartment from August 2016 through 2017.

Based on all of this evidence, the jury could have reasonably concluded that, when defendant signed the recertification forms and status report in August 2016, April 2017, and September 2017, she specifically intended to "declare [or] certify falsely" that K.H. was not a member of her household when in fact he was. (CALCRIM No. 2640; § 118, subd. (a).) Additionally, the jury could have reasonably based its guilty verdict in count 1 on its conclusions that defendant committed perjury as charged in counts 5, 6, and 7. That is, the jury could have reasonably concluded that defendant specifically intended to defraud the County of over $950 in continued CalFresh benefits for herself and her children, when she signed the recertification forms and the status report in August 2016, April 2017, and September 2017, falsely indicating that K.H. was not a member of her household. (Welf. & Inst. Code, § 10980, subd. (c)(2).)

15

Defendant maintains that, "an examination of the records as a whole reveals that there was insufficient evidence to establish that [she] willfully and knowingly made a false statement or had the specific intent to defraud in counts 1 and 5 through 7." She observes that the jury acquitted her of perjury in counts 2, 3, and 4, which were based on one recertification form and two status reports that she signed in March 2015, September 2015, and March 2016. She also points to the evidence that supported her defense, including the evidence that she and K.H. stopped living together around August 2014, when K.H. moved into his parents' house in Fallbrook, and she continued to live at the West 56th Street address until sometime in 2016. She further argues that the combined testimony of C.H. and J.W.—that she was often present at the Kendall Drive apartment complex after K.H. moved there in August 2016—"did not necessarily contradict" the evidence that she "would occasionally stay the night but did not live there" between August 2016 through 2017. She points out that C.H. did not begin working at the Kendall Drive apartment complex until August 2017, and that K.H. testified that she frequently visited his apartment after she became pregnant with their fourth child in early 2017.

As the People point out, however, these arguments disregard the standard of review. Reversal of a conviction for insufficient evidence is required only if, under " 'no hypothesis whatever,' " is there substantial evidence to support the conviction. (*People v. Cravens* (2012) 53 Cal.4th 500, 508.) Defendant's arguments rely on the evidence that supported her defense but disregard the substantial evidence that supports her convictions. The jury was entitled to credit the testimony of C.H. and J.W. and infer that

16

defendant and the children lived with K.H. in his Kendall Drive apartment from and after August 2016 through 2017.

Defendant further argues that "[t]he prosecution's case rested upon the disputed testimony of [K.E.'s] recollection of the conversation he had with [K.H.], which was unrecorded and memorialized in only a few paragraphs of a report written weeks after it occurred." Defendant suggests that K.E.'s testimony was not credible, but the jury was entitled to credit K.E.'s testimony, despite the defense's attempt to discredit it based on K.E.'s extensive workload and K.E.'s failure to record and more promptly memorialize his conversation with K.H.

Further, the prosecution's case for counts 1, 5, 6, and 7 did not rest solely on K.E.'s testimony concerning his January 25, 2018 conversation with K.H. Indeed, K.E. testified that K.H. told him during that conversation that defendant *did not live with him* before 2018, although K.H. admitted that defendant would sometimes spend the night in his Kendall Drive apartment. K.H. also admitted to K.E. that the children lived with him, and that he did not move out of the West 56th Street address "full time" before August 2016, while defendant still lived there.

The prosecution's case for counts 1, 5, 6, and 7 also rested on the testimony of J.W. and C.H., which contradicted defendant's and K.H.'s claims that defendant and the children did not live "full time" with K.H. before 2018. J.W.'s and C.H.'s testimony showed that defendant lived at the Kendall Drive address with K.H. and the children from August 2016 through 2017. Other evidence corroborated J.W.'s and C.H.'s testimony, including the undisputed evidence that, from and after August 2016, the older children

17

attended a San Bernardino elementary school, which was within walking distance of the Kendall Drive apartment.

B. *The Failure to Instruct on the Corroboration Requirement of Perjury Was Harmless*

Defendant claims that the court impermissibly lowered the prosecution's burden of proof and violated her due process rights in failing to instruct the jury, sua sponte, that the testimony of a single witness that a defendant's alleged perjurious statement was false requires corroborating evidence. (§ 118, subd. (b).) We agree that the court erroneously failed to instruct sua sponte that the proof that an allegedly perjured statement is false cannot be based on the testimony of a single witness and requires corroboration. (*Ibid*.) But, we conclude that this error did not prejudice defendant.

1. Relevant Background

The court instructed the jury on the elements of perjury pursuant to CALCRIM No. 2640. The given instruction omitted a nonbracketed paragraph from the pattern instruction, which provides: "You may not find the defendant's statement was false based on the testimony of _____ <insert name of witness> alone. In addition to the testimony of _____ <insert name of witness>, there must be some other evidence that the defendant's statement was false. This other evidence may be direct or indirect." (CALCRIM No. 2640.)

The record does not indicate that the court and counsel discussed this omitted paragraph or why the court omitted it. The defense did not object to its omission.

18

2. Applicable Legal Principles

The court in *People v. Trotter* (1999) 71 Cal.App.4th 436 (*Trotter*) aptly explained the corroboration element of perjury: "The elements of perjury are a willful statement, made under oath, of any material matter which the declarant knows to be false. (Pen. Code, § 118, subd. (a).) Proof of perjury requires corroboration; section 118, subdivision (b) provides: 'No person shall be convicted of perjury where proof of falsity rests solely upon contradiction by testimony of a single person other than the defendant. Proof of falsity may be established by direct or indirect evidence.' The court has a sua sponte duty to instruct on the corroboration requirement of section 118, and the failure to do so is error. (See *People v. DiGiacomo* (1961) 193 Cal.App.2d 688, 698-699 [construing instruction regarding corroboration requirement of former section 1103a, which contained language identical to section 118, subdivision (b)]."[3] (*Trotter*, at pp. 439-440, fns. omitted.)

The corroboration requirement for perjury "focuses on" and pertains solely to *the falsity* of the alleged statement that the defendant declared under oath, or penalty of perjury, but knew to be false. (*Trotter*, *supra*, 71 Cal.App.4th at p. 440.) The corroboration requirement "applies only 'where *proof of falsity* rests solely upon contradiction by testimony of a single person other than the defendant.' " (*Ibid.*) "The

---

[3] In 1989, former section 1103a was repealed and reenacted as section 118, subdivision (b). (Stats. 1989, ch. 897, §§ 13, 29; *Trotter*, *supra*, 71 Cal.App.4th at p. 440, fn. 3.)

corroboration requirement assumes that the defendant has made a statement under oath, and the issue for resolution is the veracity of that statement." (*Ibid.*)

The corroboration requirement for perjury and accomplice testimony is a matter of state law. "The Legislature has determined that because of the reliability questions posed by certain categories of evidence, evidence in those categories by itself is insufficient as a matter of law to support a conviction. For example, the Legislature has required that the testimony of an accomplice (Pen. Code, § 1111), and the testimony of a single witness in a perjury case *as to the falsity of the defendant's perjurious statement* (Pen. Code, § 118, subd. (b)), must be corroborated before a conviction can be based on them." (*People v. Cuevas* (1995) 12 Cal.4th 252, 261, italics added.)

Corroborating evidence that an alleged perjured statement is false may be direct or circumstantial, and may be based on the defendant's testimony, statements, and behavior. (*People v. Morris* (1971) 20 Cal.App.3d 659, 664.) Corroborating evidence need not be sufficient in itself to prove the falsity of the alleged perjurious statement. (See *People v. Slaughter* (2002) 27 Cal.4th 1187, 1204 [Corroborating evidence for accomplice testimony need not be sufficient to prove every element of the charged offense.].)

In *Trotter*, the corroboration requirement did not apply because the falsity of the alleged statement—that the signature on a certificate of title for a vehicle was forged—was not disputed. Rather, the identity of the person who forged the signature was disputed, with the defendant claiming that someone other than himself forged the signature. (*Trotter*, *supra*, 71 Cal.App.4th at pp. 440-441.)

20

Here, the falsity of defendant's initial and continuing statements to the County that K.H. was not a member of her household and that she had no income, were very much disputed at trial; in fact, the falsity of defendant's submissions to the County was the central issue at trial. The prosecution claimed that defendant initially made these false representations in her August 2014 CalFresh application and continued to make the same false representations when she signed and submitted her recertification forms and status reports to the County, under penalty of perjury, between March 2015 and September 2017. The defense claimed these representations were true because neither defendant nor the children lived with K.H. from August 2014 through 2017.

In finding defendant guilty of perjury in counts 5, 6, and 7, the jury necessarily determined that defendant falsely represented in her August 23, 2016; April 7, 2017; and September 2, 2017 submissions to the County, that she and the children were still living at the West 56th Street address in San Bernardino.[4] The jury could have based these falsity determinations solely on the testimony a single witness, J.W.

J.W. testified that the children were listed as "occupants" on K.H.'s August 26, 2016 lease, J.W. knew that the children lived with K.H., and J.W. saw defendant at the Kendall Drive apartment complex "daily" between August 2016 through 2017. Because J.W.'s testimony, standing alone, showed that defendant's August 2016

---

[4] Because the jury acquitted defendant of the perjury charges in counts 2, 3, and 4, which were based on her under-penalty-of-perjury signatures on the recertification forms and status reports that she signed in March 2015 (count 2), September 2015 (count 3), and March 2016 (count 4), we confine our discussion to defendant's perjury convictions in counts 5, 6 and 7.

21

through September 2017 under-penalty-of-perjury submissions to the County were false, the court had a duty to instruct the jury, sua sponte, that it could not convict defendant of perjury in counts 5, 6, and 7 based on J.W.'s testimony alone.

In *People v. Najera* (2008) 43 Cal.4th 1132, our Supreme Court noted the risk of prejudice inherent in failing to instruct on the corroboration requirement for accomplice testimony:  "In the absence of an instruction on the legal requirement that an accomplice be corroborated, there is a risk that a jury—especially a jury instructed . . . that the testimony of a single witness . . .  is sufficient to for proof of any fact—might convict the defendant without finding the corroboration Penal Code section 1111 requires."  (*Id*. at p. 1137.)  This risk was present here because the court gave the jury CALCRIM No. 301, which instructed that, "[t]he testimony of only one witness can prove any fact."

Still, the failure to instruct on the corroboration requirement did not prejudice any of defendant's convictions.  (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*); *People v. Whisenhunt* (2008) 44 Cal.4th 174, 214 [Failure to instruct on corroboration requirement for accomplice testimony is state law error, subject to *Watson's* reasonable probability standard.].)  That is, the record shows there is no reasonable probability that defendant would have realized a more favorable result in counts 1, 5, 6, and 7, had the court instructed the jury that it could not convict defendant of perjury in counts 5, 6, and 7 based on J.W.'s testimony alone.  (*Ibid*.)  Our conclusion is based on several factors.

First, J.W.'s testimony was corroborated by C.H.'s testimony and other evidence. C.H. worked at the Kendall Drive apartment complex from August 2017 to February 2018, and saw defendant at the apartment complex "throughout the week" with

her children, beginning several months before C.H. spoke with K.E. on January 31, 2018. J.W.'s testimony was further corroborated by the lease agreement that K.H. signed on August 26, 2016, which listed the children as "occupants" of K.H.'s apartment. Additionally, K.H. admitted to K.E. that the children lived with him; and the defense did not dispute that, before 2018, the older children attended school in San Bernardino, near the Kendall Drive apartment.

Second, the defense did not dispute that defendant did not live at the West 56th Street address in San Bernardino between August 2016 and September 2017, as she claimed in her under-penalty-of-perjury submissions to the County during this period (counts 5, 6, & 7). Indeed, defendant's father testified that defendant lived in his home in Escondido, from some time in 2016 through 2017. Independently of J.W.'s testimony, defendant's father's testimony showed that defendant falsified her home address in her three under-penalty-of perjury submissions to the County between August 2016 and September 2017. Further, an aid eligibility worker for the County testified that defendant was ineligible to receive CalFresh benefits from the County during the time she lived outside of the County, which would have included the time she lived in Escondido.

Third, in light of the strong showing that defendant and the children lived with K.H. from August 2016 through 2017, we believe it is highly probable that the jury did not credit K.H.'s claim that defendant and the children did not move into his apartment "full time" until 2018. It is also highly probable that the jury disbelieved defendant's statement to K.E., in February 2018, that she and K.H. did not purchase or prepare meals together before 2018. The jury also likely discredited K.H.'s testimony that, before 2018,

23

defendant drove the children to their school in San Bernardino from their home in Escondido.

In sum, it is not reasonably probable that the erroneous omission of the corroboration requirement from CALCRIM No. 2640, for purposes of counts 5, 6, and 7, regarding J.W.'s testimony, prejudiced the jury's guilty verdicts in counts 1, 5, 6, or 7. The falsity of defendant's August 2016, April 2017, and September 2017 submissions that defendant and the children lived at the West 56th Street address, was amply shown. And, because the jury acquitted defendant of perjury in counts 2, 3, and 4, it is highly probable that that the jury based its guilty verdict in count 1 on its conclusions that defendant committed perjury as charged in counts 5, 6, and 7.

## C. *Any* Dueñas[5] *Error Was Also Harmless*

Relying on *Dueñas*, *supra*, 30 Cal.App.5th 1157, defendant claims the court violated her due process rights in imposing a $300 restitution fine (Pen. Code, § 1202.4), together with a $40 court operations fee (Pen. Code § 1465.8) and a $30 criminal conviction fee (Gov. Code, § 70373) on each of her four convictions, for a total of $580, without finding that she was presently able to pay the $580 amount. The court found, however, that defendant was unable to pay $727 in defense investigation costs, saying it was "prioritizing restitution in this case," and ordered defendant to pay $29,011.05 in restitution to the County, in monthly payments of around $483, over five years.

---

[5]  *People v. Dueña* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

24

Defendant did not object to the imposition of the $300 restitution fine, or the $280 in court operations and criminal conviction fees at sentencing on August 20, 2019, even though *Dueñas* was decided in January 2019. (*Dueñas*, *supra*, 30 Cal. App.5th 1157.) She claims, however, that if her claim of due process or *Dueñas* error is deemed forfeited based on her failure to object, then her counsel rendered ineffective assistance in failing to object. The People argue that defendant forfeited her claim of *Dueñas* error by failing to object. Alternatively, they argue that any due process or *Dueñas* error was harmless beyond a reasonable doubt because the record shows that defendant has no disabilities that would prevent her from working, and she will be able to earn sufficient employment income to pay the $580 sum over time.

We agree that any *Dueñas* error was harmless beyond a reasonable doubt. Thus, we do not address the parties' claims of forfeiture or ineffective assistance of counsel.

*Dueñas* held that due process principles require courts to conduct an ability-to-pay hearing and to find that the defendant has a present ability to pay court operations and court facilities fees before the court may impose such fees. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.) To avoid an unconstitutional interpretation of section 1202.4, *Dueñas* further held that courts must stay the execution of a restitution fine, "until and unless the People demonstrate that the defendant has the ability to pay the fine." (*Dueñas*, at pp. 1169-1172.)

Several courts have concluded that *Dueñas* was wrongly decided. (E.g., *People v. Curry* (2021) 62 Cal.App.5th 314, 328 [and cases cited].) And our Supreme Court is currently reviewing two questions that lie at the heart of *Dueñas*: (1) whether the court is

25

required to consider the defendant's ability pay before it may impose or execute fines, fees, and assessments; and (2) if so, whether the defendant or the People bear the burden of proof regarding the defendant's inability to pay. (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)

In this case, it is unnecessary to determine whether *Dueñas* was wrongly decided because any due process or *Dueñas* error that the court committed in imposing the $300 restitution fine and the $280 in fees, without determining that defendant was presently able to pay them, was harmless beyond a reasonable doubt. (*People v. Jones* (2019) 36 Cal.App.5th 1028, 1035.) " ' "Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." ' " (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076, quoting *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837.)

Defendant's probation report shows that she was born in 1985, she was employed as a manager for a large retail chain for five years, and her health is "good." Defendant will be able to earn sufficient employment income to pay the $580 amount over time, either while or after she pays her approximate $483 in monthly restitution payments to the County, over five years, totaling $29,011.05. Thus, any due process or *Dueñas* error was harmless beyond a reasonable doubt.

26

D. *Defendant's Five-year Probationary Term Must Be Reduced to Two Years*

Defendant claims her five-year probationary term, which was imposed on August 20, 2019, must be reduced to two years, pursuant to Assembly Bill 1950 (Stats. 2020, ch. 328, § 2), which was enacted effective January 1, 2021. (*People v. Quinn* (2021) 59 Cal.App.5th 874, 879.) The bill amended section 1203.1 to provide that two years is the maximum probationary term that a court may be impose for a felony offense, except for certain felony offenses that do not apply here. (§ 1203.1, subds. (a), (m).)

The People concede and we agree that Assembly Bill 1950 retroactively applies to defendant under *In re Estrada* (1965) 63 Cal.2d 740 and its progeny because it is ameliorative legislation, and defendant's judgment was not final when the bill was enacted effective January 1, 2021. We join other courts which have concluded that Assembly Bill 1950 applies retroactively to defendants whose judgments were not final on appeal when the bill went into effect on January 1, 2021. (*People v. Quinn*, *supra*, 59 Cal.App.5th at pp. 879-883; *People v. Sims* (2021) 59 Cal.App.5th 943, 956-964; *People v. Lord* (2021) 64 Cal.App.5th 241, 245-246; *People v. Schultz* (2021) 66 Cal.App.5th 887, 892-899; *People v. Czirban* (2021) 67 Cal.App.5th 1073, 1095.)

The People disagree, however, that the appropriate remedy is to simply reduce defendant's probationary term to two years. Instead, they argue the matter must be remanded for resentencing so that the court may determine the status of defendant's probation at the time it is terminated at the two-year mark, including whether she satisfactorily completed the terms of her probation during that time (§ 1203.4, subd. (a)),

and to modify the terms of her probation, if necessary, so that she may be able to successfully complete it (§ 1203.3. subd. (a)).

We agree that the matter must be remanded for resentencing. Assembly Bill 1950 "is silent on retroactivity" (*People v. Quinn*, *supra*, 59 Cal.App.5th at p. 884) and does not address the appropriate remedy where, as here, defendant was ordered to make monthly restitution payments for five years as a condition of her five-year probation. Thus, we remand the matter for resentencing, so that the court may fashion an appropriate remedy in light of the retroactive amendments to section 1203.1. (*People v. Sims*, *supra*, 59 Cal.App.5th at pp. 963-964; *People v. Czirban*, *supra*, 37 Cal.App.5th at p. 1095.)

## IV.  DISPOSITION

Defendant's convictions in counts 1, 5, 6, and 7 are affirmed.  The matter is remanded for resentencing, at which time the court shall reduce defendant's period of probation to a term not exceeding two years and otherwise fashion appropriate terms in light of sections 1203.1 and 1203.3.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
                                                                                          J.

We concur:


RAMIREZ
                    P. J.


MILLER
              J.

29